## SIMMONS *vs.* BULL.

1. In the absence of statutory regulations the father is under no *legal* obligation to support his illegitimate child; the statute prescribes the only legal mode by which this support can be obtained.
2. A bill filed by an infant bastard by its next friend, alleging that the defendant was its father, and that he, to avoid the statutory liability for its support, had removed beyond the jurisdiction of the State, leaving property, out of which the bill prays that provision may be made for complainant's support, is without equity.

ERROR to the Chancery Court of St. Clair.

Heard before the Hon. E. D. TOWNES.

This bill was filed by the plaintiff in error, by his next friend, against the defendant. It alleges, that the complainant, an infant, is a bastard, begotten by the defendant, and that he had removed beyond the limits of this State, in order to avoid the statutory liability for its support, leaving property of value in this State, out of which the bill prays that provision may be made for the complainant's support. The Chancellor dismissed the bill for want of equity, and his decree is now assigned for error.

RICE & MORGAN, for plaintiff in error:

The proceeding in bastardy, authorized by our statute, is not strictly of a criminal character. The bond in such case assimilates itself, in its legal effect, quite as much to a bail bond in a civil case, as to a recognizance in a State case. 3

Metcalf 210; 13 Pick. 289; 26 Maine 382; 16 Ala. 600; ib. 804. The appearance of the defendant was not indispensable, to authorize the County Court to determine the question of filiation. He could not at pleasure arrest the course of the court. 4 Ala. 328. The act of 1811 has been so far modified by the act of 1816, as only to make it necessary to submit the case to a jury when the reputed father demands it. 4 Ala. 331; 15 ib. 556.

The statute law of Alabama makes it the duty of the court, if the issue is found against the reputed father, to condemn him to pay not exceeding $50 a year for ten years, "towards the maintenance and education of such child," * * * "so that the same be not paid to the mother of such child." Clay's Dig. 134, § 4. A plea of guilty, or a confession of the act by the reputed father, is equivalent to finding the issue against him. Pruitt v. Judge, 16 Ala. 707. A decree *pro confesso* against a non-resident defendant is equivalent to a confession of the matter as charged. Arnold v. Sheppard, 6 Ala. 299. Even if it be admitted that the mother may make a compromise before the issue is tried, that fact would only prove that the proceeding is not a criminal, but only a civil suit.

The right of the child to a sum of money "for maintenance and education" is given by statute, subject only to be compromised before judgment by the mother, who is expected to support and maintain the child. Robinson v. Crenshaw, 2 S. & P. 276. But if there was any such compromise, it must be set up as a defence. The court cannot presume, as against the child, that its mother has compromised away its rights, when the defendant does not say so.

Can the defendant, by his flight alone, defeat the operation of the statute, and the right thereby given to the child? Is the statute to be confined only to that class of persons who are willing to remain here, to answer the violated law? Shall the absconding offender gain the mastery over the law, while his property is here in the power of a court of chancery? Shall no order or decree be made to subject this property to "the maintenance and education" of the child, when all the defendant's rights will be protected by the usual bond in favor of non-resident defendants? Clay's Dig. 353 § 45; 9 Ver.

134.   Whenever the law gives a right to any property, or to its enjoyment in future, and all remedy at law is destroyed by the voluntary act of a wrong-doer; and when there will be a failure of justice, and irreparable injury, without the aid of a court of equity, that court will exercise its transcendant powers.   Reavis's Dig. 247 §§ 153 *et seq.*

Where a wife had filed a bill for alimony, &c., against her husband, and it appeared that he had abandoned her without any support, and threatened to leave the State, the court, on the petition of the wife, granted a writ of *ne exeat* against him. 1 Johns. Chan. R. 264.   The Court of Chancery has power to aid a judgment and execution creditor, to discover and reach the property of his debtor, whenever it has been put out of the reach of an execution at law.   20 Johns. 554; 5 Johns. Chan. R. 280; 4 ib. 687.   A complainant who, by accident, is prevented from obtaining relief at law where he has it complete, may be relieved in chancery.   2 Hen. & Mun. 10.   As to what is meant by "accident" in a court of chancery, see Story's Eq. Juris. § 78; Jeremy's Equity, B. 3, Part 2, 358.

WALKER & MARTIN, *contra:*

The father is under no legal obligation, at common law, to maintain his illegitimate offspring.   His liability is only of statutory creation, which prescribes the remedy to be pursued; and none other can be.   16 En. Com. Law R. 302; 19 Wend. 405; Kent's Com. vol. 2, 215.   The statutory remedy is strictly penal, and must be literally pursued.   22 Ver. 543.

The obligation of the father to maintain his legitimate children results from his right to their custody and services; while he can exercise no authority or control over his illegitimate children.   Kent's Com. 2 vol. 215; 8 N. Hamp. 417; 6 Ala. 501; 17 ib. 14.

CHILTON, J.—This was a bill filed by an infant by its next friend, charging that it was a bastard, begotten by the defendant, who, to avoid the statutory liability for its support, has removed beyond the jurisdiction of this State, leaving property belonging to him in the county of St. Clair.   The bill prays that publication may be made, and that provision

may be made for the support of the infant out of the property of the defendant. The Chancellor dismissed the bill for want of equity.

At the common law, a bastard was said to be *filius nullius.* His natural father may die never so rich, and he may be upon the parish, yet he took none of his estate, unless left to him by will. In the absence of a statute, the father is under no legal obligation to support him; and the statute prescribes the mode, and the only mode, by which this support can be obtained. The case before us shows the necessity for further legislation on the subject. Our duty, however, is plain; as we have no power to make, but only to administer the law, and there is no provision of either the common or statute law authorizing this proceeding, the Chancellor properly dismissed the bill, and his decree must consequently be affirmed. See 16 Eng. Com. Law R. 302; 19 Wend. 405; 2 Kent 215.

Decree accordingly.